UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOVANNI REYES,<br>*Defendant*. | No. 3:17-cr-00013 (JAM) |

**ORDER DENYING MOTION TO SUPPRESS**

The United States has charged defendant Jovanni Reyes with the possession of heroin with intent to distribute, the possession of a firearm in furtherance of a drug trafficking crime, and the possession of a stolen firearm. Defendant moves to suppress nearly all evidence discovered when police searched his home pursuant to a warrant. He argues that the warrant was facially invalid and that, even if it were valid, the police's search exceeded the warrant's scope. Following a suppression hearing, I conclude that the warrant was valid and that the search did not exceed its permissible scope. I will therefore deny defendant's motion to suppress.

**BACKGROUND**

The facts surrounding defendant's arrest and the search of his house are largely uncontested; what follows are my findings of fact based on the record and testimony from the suppression hearing.[1] In late 2016, officers in the Bridgeport Police Department, working with a confidential informant, conducted several controlled purchases of heroin from a seller they later identified as defendant. The officers then sought a warrant from a judge of the Connecticut Superior Court to search defendant's residence for any cell phones and related records: "[c]ell phones and their contents, and/or electronic equipment capable of communicating via voice or

---

[1] I rely on facts as set forth in the suppression hearing testimony and filed affidavit (Doc. #22-2) of police officer Alastair Keith Hanson as well as the filed affidavit of defendant (Doc. #20), who did not testify.

1

text messages, cell phone records, and cell phone bills to include examination and analysis of said devices." Doc. #19-1 at 9.

In support of the warrant, the officers stated that defendant had repeatedly used a cell phone to make arrangements with the confidential informant for the controlled purchases. According to the officers' sworn warrant application, defendant texted the confidential informant each morning from a particular cell phone number to indicate his availability. *Id.* at 5. The officers' application also identified defendant's residential address and stated that defendant had been observed at this residence on multiple occasions during the period surveillance at different times of the day. *Id.* at 6.

The officers further stated that "based on training and experience" they knew that "individuals who traffic illegal drugs will utilize cell phones, e-mail, and the Internet to communicate with customers and fellow drug traffickers, and will store such telephone numbers, e-mail addresses, and web addresses within their phones and computers and on external computerized devices." *Id.* at 6. The application, however, did not describe any facts to suggest that defendant would keep any cell phones or records in his home. Instead, the application stated in conclusory terms that "the affiants have probable cause to believe that evidence of Sale of Narcotics, 21a-278(b), in the form of a cell phone, and/or electronic equipment capable of communicating via voice or text messages, may be located" within defendant's residence. *Ibid* Indeed, rather than setting forth any factual basis to believe that defendant stored any cell phones or cell records in his residence, the application stated that "[t]he affiants also know that drug traffickers will carry their phones *on their person*." *Ibid.* (emphasis added).

A Connecticut Superior Court judge read the application and authorized the warrant on December 8, 2016. That day, a group of federal and state law enforcement officers went to

defendant's house to execute the warrant. While the officers were outside the house, they observed defendant leave the house and enter his car parked in the driveway. A group of officers proceeded to intercept defendant at his car, where they executed a separate search warrant on the car. That search revealed heroin inside the vehicle; defendant was removed from the car, told his *Miranda* rights, and placed under arrest. Meanwhile, another group of law enforcement officers attempted to enter defendant's house, eventually breaking down the door after observing an unknown man inside who refused to respond to their knocks and requests to open the door.

Officer Hanson, the search team leader, asked defendant whether he had any contraband on his person, and defendant indicated that he had some packages of drugs tucked into his underwear. To facilitate privacy while he searched defendant's person, Officer Hanson brought defendant inside the house, where he handcuffed defendant to a chair. A search of defendant's person yielded a small cell phone and two bundled packets in defendant's underwear containing a substance that field-tested positive for heroin.

At that point, defendant and the other man were seated in the living room of the house under police supervision. Officer Hanson told defendant that the police had a warrant to search the house, and asked whether there were others in the house or anything else they should be aware of. Defendant told Officer Hanson to "do your f***ing job," and pointed to a bedroom down the hallway. Officers entered the room and took pictures of it, finding, among other things, a state identification card bearing defendant's name on the dresser as well as a cell phone.

Officer Hanson and other members of the search team began searching the room, which contained a bed and dresser, a closet, and scattered items and articles of clothing strewn along the floor and over furniture. The officers lifted the bed mattress and found automobile records, currency, lottery tickets, and a firearm with a loaded magazine. The officers looked in shoes that

were in the room, and found a packet containing approximately ten bundles of heroin inside a red boot. They also looked within boxes inside of the room's closet, and inside one box found drug paraphernalia: scales of a kind commonly used to package narcotics and stamping material that matched stamps on the narcotics bags that they had recovered. The officers searched several other areas of the house, but did not find drug contraband anywhere else.

## DISCUSSION

Defendant moves to suppress the evidence found in his house on two grounds. First, he argues that the warrant was not supported by probable cause to believe that there would be cell phones and cell phone records in his house. Doc. #19 at 4. Second, he argues that the scope of the officers' search exceeded the scope of the warrant. *Id.* at 7.

*Probable Cause*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (internal quotation marks omitted). Probable cause therefore cannot be "reduced to a neat set of legal rules." *Ibid.* As a result, a court reviewing a probable cause determination "generally accords substantial deference to the finding of an issuing judicial officer that probable cause exists," limiting its inquiry to whether the officer "had a substantial basis" for his or her determination that, given the totality of the circumstances, there was "a fair probability that contraband or evidence of a crime w[ould] be found in a particular place." *Ibid.*; *see also United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (discussing probable cause to search residences in particular).

In light of the sparse allegations of the application, I think it is a reasonably close call whether there was probable cause to believe that defendant stored cell phone or cell phone records in his residence. Still, I cannot say in light of the deferential standard of review that the state court judge altogether lacked a substantial basis to conclude that there was probable cause. Common sense and experience suggest that it was reasonable and plausible for the state court judge to conclude that defendant would keep one or more cell phones and related records at his home.[2]

This is not a case where, as defendant contends, the court necessarily reasoned solely "from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." Doc. #19 at 6. Officer Hanson described the "extensive surveillance" that was placed on defendant for at least three months, which included observing defendant moving between his residence and his car at many different times of day, observing defendant using his vehicle for drug transactions, and observing defendant's vehicle outside his residence near the times when drug transactions were occurring. Observation of a person going to and from his residence around the time he is engaged in drug deals can be enough to establish a fair probability that items related to those drug deals may be at the residence, even if the police do not observe the person going immediately home from a transaction. *See United States v. Muhammad*, 520 Fed. App'x 31, 38 (2d Cir. 2013). While there is not as tight a correlation between the timing of defendant's transactions and the observation of him at the residence as there was in *Muhammad*, Officer Hanson testified that defendant's residence was the only

---

[2] This common sense conclusion was borne out by the officers' eventual recovery of a cell phone from defendant's room, but of course this after-the-fact occurrence is not pertinent to whether the officers had probable cause in the first place. Moreover, despite the testimony of Officer Hanson at the suppression hearing about how common it is for drug dealers to have multiple cell phones, the search warrant application does not elaborate on this point, and in fact there was evidence only that defendant had been using a single cell phone in connection with the controlled purchase transactions.

5

address he was aware of defendant using during the months-long investigation. The police engaged in significant amounts of surveillance over several months and failed to turn up another location where defendant might be keeping his phones or records, unless he kept everything in his car.

Even if the warrant was deficient, the evidence from the search would still be admissible under the good faith exception in *United States v. Leon*, 468 U.S. 897, 922 (1984). "[T]he exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011). In such a case, the error "rests with the issuing magistrate, not the police officer," and the deterrent effect of excluding evidence is lessened. *Id.* at 239.

Here, there is no indication that the issuance of the warrant was procedurally invalid or that the judge "was misled by information in an affidavit that the affiant knew was false." *Leon*, 468 U.S. at 923. And, as discussed above, there was significant reason to suspect defendant's residence might have evidence related to his narcotics transactions. This is not a case where the warrant was facially deficient, where "the issuing magistrate wholly abandoned his or her judicial role," or the application was "so lacking in indicia of probable cause as to render reliance upon it unreasonable." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011). The good faith exception therefore applies. *Ibid.*

*Scope of the Warrant*

Defendant also argues that the results of the officers' search should be suppressed because the search exceeded the scope of the warrant. "If the scope of [a] search exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

6

"We look directly to the text of the search warrant to determine the permissible scope of an authorized search." *United States v. Bershchansky*, 788 F.3d 102, 111 (2d Cir. 2015). In this case, the search warrant authorized a search of defendant's residence, describing it by its address and several physical features. Doc. #19-1 at 9. The warrant limited the search to particular categories of property, namely ""[c]ell phones and their contents, and/or electronic equipment capable of communicating via voice or text messages, cell phone records, and cell phone bills." *Ibid.*

Defendant correctly points out that much of the evidence discovered by the police in their search does not fit into the warrant's categories—in particular, the heroin, drug paraphernalia, and loaded firearm that were recovered from defendant's bedroom. The government argues that these items fall under the well-established "plain view" exception to the Fourth Amendment. "Under the plain view doctrine, a law enforcement officer may seize evidence without a warrant if (1) the officer is lawfully in a position from which the officer views an object, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object." *United States v. Babilonia*, 854 F.3d 163, 179–80 (2d Cir. 2017) (internal punctuation omitted).

Defendant argues that the officers were clearly looking for drugs in addition to the material in the warrant. Doc. #27 at 3–4. But "[i]n evaluating the legitimacy of police conduct under the Fourth Amendment, we look to objective circumstances rather than an officer's subjective motivation." *Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir. 1994). A properly confined search pursuant to a warrant does not violate the Fourth Amendment just because the officers conducting the search have a subjective desire to discover something beyond the warrant's scope. *Ibid.*; *see also Horton*, 496 U.S. at 139–40.

Next, defendant contends that the police officers were operating outside the scope of the warrant by allegedly looking for cell phones and cell phone records under defendant's mattress or inside his shoes and boots. Doc. #19 at 8. I disagree. Many cell phones are small enough to fit inside shoes or boots, and the government's method of searching the inside of the shoes by shaking them to see if anything falls out was reasonable. Similarly, there could have been a cell phone in the box in which the officers found drug paraphernalia.

As for searching under the mattress, I credit Officer Hanson's testimony, grounded with citation to specific recent examples, that many people keep their records or important documents under their mattress. *See* Doc. #22-2 at 3–4. His testimony is bolstered by the fact that defendant in fact kept miscellaneous documents under his mattress—records from the DMV as well as a lottery ticket. I therefore conclude that the officers were lawfully in a position to view all of the items that defendant challenges. The incriminating character of a firearm, a bundle of heroin, and drug paraphernalia matching the drugs found earlier, would also be apparent. And finally, defendant does not appear to contest that the officers had a lawful right of access to the objects, beyond the challenge to the validity of the warrant discussed above. The government has therefore met all of the requirements of the plain view doctrine. *See Babilonia*, 854 F.3d at 180.

Finally, defendant argues that the police officers' search should have been limited temporally to the amount of time necessary to search for the items in the warrant, and the government "did not present any information at the hearing to show that they had taken steps" to limit the duration of their search. Doc. #27 at 5–6. But defendant acknowledges that the search for cell phones "admittedly could have taken a long time," Doc. #27 at 5, and does not give any reason to believe the government exceeded the legitimate duration of search authorized by the warrant.

8

## CONCLUSION

Defendant's motion to suppress (Doc. #18) is DENIED.

It is so ordered.

Dated at New Haven, Connecticut, this 19th day of June 2017.

                                                                                  /s/ *Jeffrey Alker Meyer*
                                                                                Jeffrey Alker Meyer
                                                                                United States District Judge